**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RONALD EDWARD CRAFT, JR.,**

    **Plaintiff,**

v.                                    Case No.  8:13-cv-00205-T-17TBM

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

    **Defendant.**
    _____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was forty-eight (48) years of age at the time of his administrative hearing in August 2011.  Plaintiff stands 5' 10" tall and weighed 165 pounds according to the administrative record.  He has a GED and reported past relevant work in construction as a superintendent and as a crane rigger.  Plaintiff applied for disability benefits and Supplemental

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

Security Income in February 2010, alleging disability as of April 1, 2004, by reason of liver, kidney, back, hips and leg problems, anxiety and migraines. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified on his own behalf. Plaintiff testified that he can no longer work because of extreme pain in his neck, shoulders, back, hips, and legs.[2] He had undergone surgery in his low back four or five weeks prior to the hearing and was still recuperating. He claimed he needs another surgery for is mid-back and neck. He describes neck and shoulder pain that radiates up into his head and down into his arms, and back pain which also radiates up his back and down his legs into his feet. He claims arthritis throughout the entire body, which affects his walking. He takes Oxycodone and a muscle relaxer. He has steel in his hand, hip and leg from an earlier time. Plaintiff was using a walker after surgery. Prior to that he used a cane. He claimed he could walk only a few feet and stand only ten minutes without the walker. Sitting is very uncomfortable and he can sit only five minutes before he gets uncomfortable. He cannot lift a gallon of milk. He was in prison between 2004 and 2006. His job was as a kitchen manager. He took stock, ordered food and checked it in. Others did the lifting.

He also suffers from depression and feels useless. He sees a psychiatrist periodically and receives medicine, which helps some. His depression affects his concentration. He cannot think straight and he gets distracted easily.

---

[2]Plaintiff sustained significant injuries to his hips and legs in an accident in the 1990's. He was involved in another motor vehicle accident in 2009, which he claims aggravated his conditions.

Plaintiff spends half the day in bed.  He reads, watches television and works on his computer.  He tries to do some things around the house, but denies doing housework, yard work, cooking, or laundry.  He cares for his personal needs, but needs help reaching down to his legs.  He uses a scooter when on occasion, he shops with his wife.  He does not drive.  He denied drinking any more, but he has recently smoked marijuana.  (R. 47-68).

The ALJ next took testimony from Nicholas Fidanza, a vocational expert (VE).  Initially, assuming that Plaintiff could perform a full range of light work, the VE opined that he could do the work he performed in prison in shipping and receiving.  On a hypothetical assuming a person of Plaintiff's age, education and work experience, capable of unskilled sedentary work, the VE opined that such person could do the work of a charge account clerk, order clerk food and beverage, and ticket seller.  If such person could not concentrate or tend to basic job tasks due to pain or mental impairments, then no work would be available.  (R. 69-70).

Following the VE's testimony, the ALJ conducted additional questioning of the Plaintiff and a Ralph Grant in connection with an overpayment claim.[3]  Counsel did not represent him on that claim and it is not at issue on this appeal.

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are set out nicely by Plaintiff and are addressed herein as necessary.

By his decision of August 18, 2011, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the cervical and lumbar spine with

---

[3] Plaintiff was found disabled and awarded benefits in a favorable decision in November 1991.  Because of his work history, the SSA claimed overpayment, which at the time of this hearing was in excess of $72, 000.

3

recent lumbar surgery, he nonetheless had the residual functional capacity to perform unskilled sedentary work. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 23-35). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

### B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises two claims on this appeal. He asserts that the ALJ's residual functional capacity assessment for unskilled sedentary work is not supported by substantial evidence and that there is new, non-cumulative and material evidence which supports a finding of disability as of November 23, 2010. By his first claim, he more particularly argues that the ALJ made his residual functional capacity (RFC) assessment based on the original

5

alleged onset date in April 2004.[4]  In a pre-hearing communication with the ALJ, counsel conceded the lack of evidence through 2008.  (R. 269).  Although there was no request to amend the onset date, Plaintiff, here, urges that the ALJ had the power and obligation to determine the correct onset date and based on this medical record, the ALJ should have found him disabled as of November 2010 by reason of his worsening neck and back impairments.  He cites evidence that in November 2010, there was a protrusion at C3-4 (R. 611) and mild encroachment of the spinal cord at C4-5 and C5-6 (R. 632).  The records further reflect cervical injections and a recommendation for cervical fusion.  (R. 619-21, 681).  In June 2011, a lumbar MRI showed disc herniation at L5-S1 (R. 630-31).  Surgery was recommended for the back as well, and Plaintiff proceeded with the lumbar surgery.  However, that surgery failed.  In short, the two significant and unresolved orthopedic problems supported a finding of disability as of November 23, 2010.

   Moreover, new evidence from after the hearing shows that the initial lumbar surgery was unsuccessful and a second surgery was performed in December 2011 (R. 715-27).  Since this evidence relates to the period in question, the Court should either determine the Plaintiff

---

[4]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440.  If a claimant can still do the kind of work she has done in the past, then the regulations require that she be found not disabled.  At this stage of the evaluation process, the burden is on the claimant to show that she can no longer perform her past relevant work.  *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).  In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The final responsibility for deciding a claimant's RFC is with the ALJ.  20 C.F.R. §§ 404.1527(d), 416.927(d).

disabled as of November 2010 or remand the case for full consideration of all the evidence. (Doc. 16 at 11-14).

In response, the Commissioner urges first that there was no error in the alleged failure of the ALJ to consider a different onset date from that alleged by Plaintiff since she found he was not disabled at any point prior to the August 2011 decision. As for the ALJ's RFC assessment, the Commissioner argues that Plaintiff fails to demonstrate any error in the conclusion that Plaintiff could perform unskilled sedentary work. As for the claim for disability insurance benefits, Plaintiff seemingly abandons that claim as his date last insured for benefits was June 30, 2009. He also fails to show he is entitled to SSI benefits on and after his new alleged onset date. That is, despite the objective record cited, Plaintiff fails to reveal limitations which would prevent sedentary level work. As for the new evidence argument, this evidence from the period between June 2011 through January 2012, was submitted to the Appeals Council (AC), which considered it and concluded that it did not provide a basis for changing the ALJ's decision. Given that substantial evidence supports the ALJ's conclusion, no relief is merited on this claim. (Doc. 17 at 4-14).

Initially, I find that Plaintiff has abandoned his claim for disability insurance benefits. In essence, he concedes a lack of evidence through 2008, makes no showing of disability in 2009, and urges that, on this record, his onset date for disability was actually November 23, 2010. His date last insured for disability insurance benefits appears from the administrative record to be June 30, 2009. Consequently, Plaintiff must show that he was disabled on or before that date. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Ware v.*

7

*Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). Here, his claim for SSI may survive his new argument, but the claim for disability insurance benefits cannot.

Moreover, Plaintiff can hardly claim error in the fact that the ALJ failed to consider an amended onset date, when no such amendment was requested by the Plaintiff or his counsel. Despite counsel's pre-hearing letter conceding the lack of medical support through 2008, I can find no indication that the Plaintiff or his counsel ever requested or even suggested that the ALJ consider a November 23, 2010 onset date.[5] In any event, as the Commissioner urges, the ALJ found that Plaintiff was not disabled at any time between 2004 and the date of decision. Absent demonstration of error in that conclusion, there is no error which need be addressed regarding the failure to identify the proper onset date.

As for the SSI claim, such is unaffected by his date last insured. Plaintiff now ties his alleged onset date to objective testing ordered by Dr. Charles Finn, M.D., on and about November 2010. *See* (R. 609-12). Findings on an MRI dated November 23, 2010, revealed degenerative disc disease of the cervical spine, broad-based disc bulges at C4-5 and C5-6 with foraminal stenosis but no cord compression, and central C3-4 disc protrusion indenting the anterior sac with mild canal narrowing and no cord impingement. (R. 611-12). In January 2011, Dr. Finn recommended cervical diskectomy and fusion. (R. 621). Plaintiff urges that cumulative evidence of this condition and Plaintiff's low back condition support that he was

---

[5] I do note that Plaintiff's brief in support of the request for review to the AC suggested a new onset date of November 1, 2010. (R. 272). As discussed below, the AC considered the contentions and evidence, but determined there was no cause to alter the ALJ's decision.

disabled as of November 2010. In further support, he cites a lumbar MRI in June 2011,[6] which he claims prompted Dr. Finn to perform low-back surgery rather than neck surgery. This surgery, which was not well documented in the record before the ALJ, occurred on June 27, 2011, within several weeks of the administrative hearing.[7] *See* (R. 683-94). I have considered in detail this record up through the date of the ALJ's decision and can find no error requiring a remand. In short, because Plaintiff fails to demonstrate a disabling condition lasting or expected to last for a continuous period of not less than 12 months at any point through the date of decision in August 2011, his first claim fails.

Regarding the cervical spine, the ALJ noted that objective evidence from 2010 revealed spondylosis, degenerative changes, diffuse annular disc bulges at multiple levels with moderate spinal canal and neural foraminal stenosis. (R. 30-31). Plaintiff evidences no quarrel with this finding, but urges that his condition worsened as of November 2010 to the point that he was disabled. Plaintiff cites the finding of a disc protrusion at C3-4 not previously made, *compare* (R. 485-86, 490) *with* (R. 612), but in and of itself this finding is of little significance especially when the whole of that finding is considered including that there is no cord impingement, (R. 612). In any event, earlier CT evidence of disc protrusion was recognized by the ALJ, (R. 30), and the Court is obliged to conclude that such was factored into the RFC assessment. Regarding the lumbar spine, the ALJ noted that a September 2009 MRI confirmed bulging discs at multiple levels. (R. 30, 494). Plaintiff again evidences no

---

[6]The MRI revealed a large central disc herniation at L5-S1 and mild diffuse central disc bulges at L4-5, L3-4 and L2-3. (R. 628-31).

[7]Records regarding this surgery were submitted to and considered by the Appeals Council. *See* (R. 683-94).

9

quarrel with this finding, nor could he. However, he does urge that together these impairments rendered him disabled back in November 2010. Unfortunately, such findings alone do not establish disability, absent a showing of associated functional limitations, and here, Plaintiff makes no showing of such limitations that would preclude sedentary work.[8]

Regarding the lumbar spine, the record supports that Plaintiff's low back condition worsened as of June 2011. As the ALJ correctly recognized, MRI evidence from June 2011 again confirmed degenerative disc disease in both the cervical and lumbar spine. (R. 31). Moreover, the MRI revealed a worsening condition in the lumbar spine where a large central disc herniation at L5-S1 was revealed for the first time. (R. 628-29). Although the surgical records themselves were not supplied, Dr. Finn performed surgery to address the herniation later in June 2011. Follow-up records suggest that Plaintiff was healing but still complaining of pain. At the administrative hearing several weeks after surgery, Plaintiff indicated that he received some pain relief but was stilling recovering and using a walker to ambulate. As the decision reflects, the ALJ concluded that the surgical intervention "should improve claimant's functional abilities within 12 months." (R. 33). Such reflects the crux of the decision that while the Plaintiff suffered severe impairments, he failed to demonstrate a disabling

---

[8] I note that later, in April 2011, Dr. Finn said Plaintiff was unable to sit and stand for long periods and that he was not able to climb and bend until approximately three to four months after his surgical intervention. (R. 619). The ALJ found this comment confusing. (R. 33). In his brief, Plaintiff concedes that, "[w]hile it is true that Dr. Finn is somewhat equivocal over the limitations, it is reasonable to conclude that a combination of cervical and lumbar degeneration such as to require two separate fusions would limit the claimant to less than a full range of sedentary work such as to preclude all employment." (Doc. 16 at 13). While such undoubtedly reflects counsel's good-faith opinion, it is not otherwise demonstrated by the record, nor does it serve to show error in the ALJ's contrary opinion up through the date of decision.

10

impairment as such is defined under the Act. Here, Plaintiff simply does not demonstrate from the medical record that such conclusion was inconsistent with the medical record or otherwise unsupported by substantial evidence.

Ultimately, the burden is upon the ALJ to assess the RFC of a claimant. The decision reflects fair consideration of the records of Drs. Finn, Smith and Jacobson, and the consulting examiner, Dr. Shefsky, as well as records from Plaintiff's term of incarceration. None of these physicians offered opinions on the Plaintiff's RFC, nor did they prescribe physical limitations or restrictions on Plaintiff's activities not considered by the ALJ. Consequently, the ALJ was compelled to reach her RFC assessment on the basis of the clinical and objective record.[9] After consideration of the medical and other record, I find that the conclusion that Plaintiff did not suffer conditions rendering him incapable of any work for any twelve month period up through the date of this decision is supported by substantial evidence. And, Plaintiff fails to demonstrate that the RFC assessment for unskilled sedentary work is inconsistent with or contrary to the substantial evidence. In sum, he is not entitled to relief on his first claim.

On his second claim, Plaintiff urges that his disability is confirmed by the fact that he underwent a second back surgery in December 2011. By this argument, the new evidence, which relates to the period under consideration by the ALJ, supports the conclusion that he was disabled as of November 23, 2010 and the Court should so find. Alternatively, he urges the case be remanded for the ALJ to consider all the evidence in light of the amended onset

---

[9]There was a July 2010 RFC assessment by a nonexamining doctor who assessed Plaintiff capable of medium exertional work. (R. 380-87). Such was discounted by the ALJ. (R. 32).

11

date. As indicated above, the Commissioner contends that this new evidence was considered by the AC, which properly concluded that it did not provide a basis for changing the ALJ's decision. Given that substantial evidence supports the ALJ's conclusion, no relief is merited on this claim.

Section 405(g) of Title 42 authorizes a district court to remand an application for benefits to the Commissioner by two methods, commonly denominated as "sentence four remands" and "sentence six remands." Each sentence "remedies a separate problem." *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). As *Ingram* is pertinent to this claim, the decision holds that when a claimant properly presents new evidence to the AC, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous under sentence four. *Id.* at 1262. Under *Ingram*, the AC "must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." 496 F.3d. at1261. When the AC refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review because it amounts to an error of law. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.1994)). Otherwise, when reviewing the AC's denial of review, the court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." *Id.* (citing *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir.1998)). If so, the court looks to the whole of the record in deciding whether the decision of the AC is supported by substantial evidence.

12

Here, the new medical evidence reflects that in January 2012, Plaintiff forwarded to the AC medical records from the Florida Spine Institute for the period from November 2011 through January 19, 2012.[10] (R. 701-27). By these records, Plaintiff underwent an L2 through S1 lumbar interbody fusion composed of removal of his prior instrumentation and a redo laminectomy on December 9, 2011. (R. 724). Thereafter, he was seen by the surgeon, Dr. John Drygas, M.D. in follow-up appointments on December 20, 2011 and January 19, 2012. Post-surgery, Plaintiff continued to report pain complaints, with 50 % relief by the second appointment. On physical examination, many of Dr. Drygas's findings were normal. *See* (R. 717-18,721-22).

In denying Plaintiff's request for review, the AC indicated that it had considered the additional record and concluded that there was no reason to review the ALJ's decision. (R. 1). After consideration of the new evidence, I conclude that this conclusion by the AC is supported by substantial evidence. While rather perfunctory, the conclusion reflects the AC's consideration of the new evidence. And, while Plaintiff urges otherwise, I cannot read these reports as reflecting on the period of time adjudicated by the ALJ. The reports themselves do not reflect such and in no way can I see that they relate back to November 23, 2010. Moreover, the new evidence on the whole supports the ALJ's conclusion that Plaintiff failed to demonstrate a disabling impairment that had lasted or was expected to last twelve months or more. While the evidence of the redo laminectomy supports that the June 2011 surgery was

---

[10]The AC also reviewed records from Edward White Hospital from June 2011, including the operative report of Plaintiff's discectomy and fusion by Dr. Finn, (R. 683-94), and follow-up records between July 13, 2011 and September 20, 2011, (R. 695-99). *See* (R. 5).

unsuccessful, there is no indication in the new evidence that suggests Plaintiff would be impaired such that he could not work after the surgery. In fact, the physical findings reflected in the follow-up records from Dr. Drygas suggest that Plaintiff was doing well after his second surgery. For example, x-rays showed satisfactory alignment of the lumbar spine; the sensory exam was normal; and motor strength was 5/5 throughout lower extremity. (R. 718-19). His pain was improving and he had normal posture, although his gait was antalgic and he had a somewhat reduced range of motion. *Id.* In a note, Dr. Drygas stated that Plaintiff "is slowly improving his back pain, with nerve pain in the right thigh." (R. 719). While it is doubtful Plaintiff could have performed any work for a period of time after this surgery, this new evidence does not reveal a disabling condition lasting for twelve months nor does it reveal error in the ALJ's conclusion that Plaintiff could perform unskilled sedentary work through the date of this decision.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

    Respectfully submitted this
    26th day of November 2013,

    THOMAS B. McCOUN III
    UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record